IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LONNIE DOLPHUS STRAWHACKER                                                         PETITIONER
ADC #074475

v.                                              4:23-cv-00692-BRW-JJV

DEXTER PAYNE, Director,
Arkansas Division of Correction                                                    RESPONDENT

### PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

### DISPOSITION

I.     BACKGROUND

Petitioner Lonnie Dolphus Strawhacker is an inmate at the Cummins Unit of the Arkansas Division of Correction. In 1990, Mr. Strawhacker was convicted by a jury in the Circuit Court of Washington County, Arkansas, of rape and first-degree battery. (Doc. No. 31-2 at 42.) He was sentenced to concurrent terms of life and thirty years' imprisonment, respectively. (*Id*.) On direct appeal, the Arkansas Supreme Court summarized the facts of the case, as set out in the victim's trial testimony, as follows:

> On Friday night, August 11, 1989, the victim went by herself to a nightclub called The Rink in Fayetteville at 9:00 p.m. and stayed there for two to three hours. Prior to going she had consumed about six beers. At The Rink she had at least two more beers and went across the street to a second nightclub, Club West, where she was refused entry because the man at the door said she was too intoxicated. The victim then crossed the street again to find her car, and as she was about to walk down into a ditch area, which had a very rocky bed, she was struck from behind and pushed into the ditch. A man put his hand over her mouth and then tried to choke her. He struck her several times in the face, head, and abdomen with his fists.
>
> The man asked her to take her clothes off, and when she could not, he continued to beat her. By this time she was bleeding from the mouth and nose, and her eyes were swelling shut. The appellant then proceeded to rape her.
>
> The victim estimates she was in the ditch with the appellant for five hours, but because of the darkness and her swollen eyes she never was able to see her attacker's face. After the appellant and the victim left the ditch, they went to the victim's mobile home in a trailer park. The victim was in considerable pain and got into her bed, where appellant joined her. The victim does not know whether the appellant had sexual intercourse with her in bed, because she was drifting in and out of consciousness.
>
> When the victim awoke in the morning, the appellant had gone, and, though virtually blind because of her swollen eyes, she made her way to a neighbor's house to seek help and was taken to the hospital.

*Strawhacker v. State of Arkansas*, 304 Ark. 726, 727-28, 804 S.W.2d 720, 721-22 (1991). In a later appeal, the Arkansas Supreme Court summarized the remaining evidence at trial as follows:

> The police developed Strawhacker as a suspect and obtained a court order to conduct a voice-identification lineup. The victim identified Strawhacker's voice as that of her assailant. In addition to this voice identification, the State presented witnesses at trial who testified that Strawhacker had been at the nightclub near the time of the assault and, later the next morning, was seen leaving the victim's trailer park wearing muddy jeans and with a bloody shirt [in] his hand.
>
> Additionally, at trial, FBI supervisory special agent Michael Malone was admitted as an expert in the field of hair and fibers. Malone testified that he had worked for the FBI for nineteen years. During that time, Malone received training in hair and fiber analysis; worked on over 3500 cases; examined hair from over 10,000 people; lectured and trained others in the field of hair comparison; published articles; and testified as an expert over 350 times. In the present case, Malone stated that he examined pubic hairs recovered from Strawhacker's jeans and from the victim's bed sheets. Malone told the jury that the pubic hair found on Strawhacker's jeans was "absolutely indistinguishable" from the victim's public-hair sample. Malone

2

also testified that the pubic hair found on the victim's bed "exhibited exactly the same characteristics" as Strawhacker's hair sample and was "absolutely indistinguishable" and "consistent with coming from Mr. Strawhacker."

At times, Malone equivocated on the reliability of hair-comparison testimony. For instance, he stated that hair comparison was not as exact as other forms of identification: "Now, I don't want to mislead you. It's not a fingerprint. In other words, nobody can get a hair to the point that they can say 'This hair came from that person and nobody else in the world.'" But Malone also testified that it would be "highly unlikely" that the pubic hair came from anyone other than the victim, and the chances that another person would have the same characteristics was "extremely remote." Malone even stated that the probability of a false identification was one in five thousand.

*Strawhacker v. State of Arkansas*, 2016 Ark. 348, at 2-3, 500 S.W.3d 716, 717-18.

Malone's testimony was not at issue on direct appeal; instead, Mr. Strawhacker argued the trial court erred in denying his motion for mistrial following a reference to a prior conviction, the trial court erred in admitting photographs showing the victim's injuries, his right to be free from double jeopardy was violated, and the voice line-up was unreliable. 304 Ark. at 728-32, 804 S.W.2d at 722-24. The Arkansas Supreme Court rejected each assertion and affirmed. *Id*. Mr. Strawhacker then filed a petition for post-conviction relief, alleging ineffective assistance of counsel. (Doc. No. 31-5 at 26-31.) The trial court denied relief after a hearing. (*Id*. at 105-06.) The Arkansas Supreme Court affirmed, rejecting Mr. Strawhacker's claims that his trial counsel failed to fully investigate and consequently failed to seek suppression of his spontaneous statement to police and his clothing. *Strawhacker v. State of Arkansas*, No. CR00-1417, 2002 WL 99142 (Ark. Jan. 24, 2002) (per curiam).

In a letter dated October 17, 2014, the United States Department of Justice informed Mr. Strawhacker that it had been reviewing "allegations of improper practices" by certain FBI Laboratory examiners, and that a subsequent Office of Inspector General report had identified Malone as one of the examiners "whose work may have failed to meet professional standards."

3

(Doc. No. 31-9 at 208.) The Department of Justice also informed the prosecutor in Mr. Strawhacker's case that it had determined Malone's testimony contained "erroneous statements." (*Id*. at 210.) Specifically, the Department concluded Malone's testimony "exceeded the limits of science" in three ways: (1) by stating or implying that an evidentiary hair could be associated with a specific individual to the exclusion of all others; (2) by assigning a statistical weight or probability or providing a likelihood that an evidentiary hair originated from a particular source; and (3) by citing the number of cases worked and the number of samples from different individuals that could not be distinguished from one another as a predictive value to bolster the conclusion that an evidentiary hair belonged to a specific individual. (*Id*. at 211.) The DOJ instructed the prosecutor to "determine the actions your office should take" in light of its conclusions, and also informed the prosecutor the United States would be waiving statute of limitations and procedural default defenses in petitions brought under 28 U.S.C. § 2255, "to make you aware of how we are handling such situations in federal cases." (*Id*. at 210-11.)

On April 20, 2015, Mr. Strawhacker filed in the Arkansas Supreme Court a *pro se* petition to reinvest jurisdiction in the trial court to consider a petition for writ of error *coram nobis*, arguing Malone's erroneous testimony deprived him of a fair trial. (Doc. No. 31-8 at 1-8.) Counsel was appointed. *Strawhacker v. State of Arkansas*, 2015 Ark. 263 (per curiam). Through counsel, Mr. Strawhacker argued in an amended petition that development of the evidence could support a claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and, alternatively, that the writ of error *coram nobis* should be expanded to include a remedy for repudiated testimony that did not fall under *Brady*. (Doc. No. 31-8 at 74-84.) The Arkansas Supreme Court granted the petition, holding the circuit court should consider whether to grant the writ under one of the four then-established categories of error – including a *Brady* violation – and should also consider whether to grant the

4

writ under the "rule of reason," to cover this unique circumstance where an expert scientific opinion presented at trial by an agent of the government was later repudiated. *Strawhacker v. State of Arkansas*, 2016 Ark. 348, at 7, 500 S.W.3d 716, 720. The Court included the following instructions:

> Therefore, at the hearing on the writ, if the circuit court concludes that the repudiated expert's testimony was material, Strawhacker is entitled to relief. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Cloird v. State*, 349 Ark. 33, 38, 76 S.W.3d 813, 816 (2002). In other words, had it been known that the hair-comparison testimony was "erroneous," is there a reasonable probability that the result would have been different? If so, then the court should grant the writ to prevent a miscarriage of justice in this unique situation. The materiality of his testimony is a question for the circuit court to decide after the record has been developed at an evidentiary hearing[.]

*Id*.

Mr. Strawhacker filed his error *coram nobis* petition on December 19, 2016. (Doc. No. 31-9 at 198-207.) He contemporaneously filed a state habeas corpus petition pursuant to Arkansas Code Annotated sections 16-112-201 *et seq.*, seeking DNA testing of the two hairs that were the subject of Malone's testimony. (*Id*. at 220-25.) Although the request for testing was granted (*Id*. at 226-27), the Arkansas State Crime Laboratory was unable to obtain a sufficient DNA profile from either hair. (*Id*. at 284, 775.) The trial court held a hearing on Mr. Strawhacker's *coram nobis* petition and denied it. (*Id*. at 271.) The court found the prosecution had not withheld evidence, as Malone's testimony was not called into question until years later, and thus there was no *Brady* violation. (*Id*. at 271-72.) The court further found that Malone's testimony was not material to the prosecution's case, as repudiation of the testimony would not have led to additional evidence useful to Mr. Strawhacker, and, without it, there was sufficient evidence to support a finding of guilt. (*Id*. at 272.)

Mr. Strawhacker appealed, abandoning his *Brady* claim but arguing the circuit court

applied an incorrect standard in denying *coram nobis* relief under the "rule of reason." *Strawhacker v. State of Arkansas*, 2022 Ark. 134, 645 S.W.3d 326. The Arkansas Supreme Court affirmed, holding the circuit court's materiality analysis was correct; specifically, the circuit court properly removed the repudiated testimony from its analysis and found there remained sufficient evidence to convict Mr. Strawhacker. *Id*. at 11, 645 S.W.3d at 334. Further, the Arkansas Supreme Court agreed with the circuit court that "in light of the evidence at trial other than Malone's repudiated testimony, Strawhacker failed to demonstrate that there was a reasonable probability of a different outcome – an acquittal." *Id*. at 12, 645 S.W.3d at 335.

Through counsel, Mr. Strawhacker now brings this Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 25.) Mr. Strawhacker contends his convictions should be vacated because he is actually innocent. (*Id*. at 13-15.) He also argues the state court's decision denying *coram nobis* relief was contrary to federal law and based on an unreasonable determination of the facts. (*Id*. at 15-22.) Respondent Dexter Payne, Director of the Arkansas Division of Correction, counters that Mr. Strawhacker's Petition is barred by the statute of limitations and also fails on the merits. (Doc. No. 31 at 27-45.) After careful consideration, I recommend relief be denied. The Petition should be dismissed with prejudice.

## II. ANALYSIS

### A. Time Bar

Mr. Strawhacker's Petition is untimely based upon the one-year period of limitation imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Title 28 U.S.C. § 2244(d)(1) and (2) impose a one-year period of limitation on habeas corpus petitions:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

In this case, the one-year limitation period began to run on October 21, 2014, which is when Mr. Strawhacker says he received notice from the Department of Justice that Malone's testimony may have failed to meet professional standards. (Doc. No. 31-8 at 3.) Under § 2244(d)(1)(D), this would be the date on which the factual predicate of Mr. Strawhacker's claim could have been discovered through the exercise of due diligence. The limitation period ran from that date until April 20, 2015, when Mr. Strawhacker filed his *pro se* petition to reinvest jurisdiction in the trial court to consider a petition for writ of error *coram nobis*. (*Id*. at 1.) This period totaled 181 days.

The petition to reinvest jurisdiction was an "application for State post-conviction or other collateral review," and its filing tolled the limitation period in accordance with § 2244(d)(2). The limitation period remained tolled until November 8, 2016, when the Arkansas Supreme Court issued its mandate on its opinion granting the petition to reinvest jurisdiction. *See Lonnie Dolphus Strawhacker v. State of Arkansas*, CR-90-198, https://caseinfo.arcourts.gov. The limitation

period began running again on that date and was tolled again on December 19, 2016, when Mr. Strawhacker filed his error *coram nobis* petition. (Doc. No. 31-9 at 198.) This period totaled forty-one days.

The limitation period remained tolled while the *coram nobis* petition was pending, until July 21, 2022, when the Arkansas Supreme Court issued its mandate on its opinion affirming the denial of *coram nobis* relief. *See Lonnie Strawhacker v. State of Arkansas*, CR-21-623, https://caseinfo.arcourts.gov. The limitation period began to run again on that date and ran until July 24, 2023, when Mr. Strawhacker filed his initial Petition for Writ of Habeas Corpus in this Court. (Doc. No. 2.) This period totaled 368 days.

In sum, the limitation period ran for 590 days. Absent a showing that Mr. Strawhacker is entitled to equitable tolling of the statute of limitation or that he has pled a tenable gateway claim of actual innocence, his Petition is time-barred.

   **1. Equitable Tolling**

Equitable tolling is only appropriate when a petitioner shows (1) he has been pursuing his rights diligently and (2) some extraordinary circumstance stood in the way of his filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling offers an "exceedingly narrow window of relief" and is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time. *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001).

Mr. Strawhacker contends the statute of limitation should be considered equitably tolled during two separate time periods. First, he says the period of time between his receipt of the DOJ letter and his filing of the *pro se* petition to reinvest jurisdiction should be tolled because he was without counsel, trying to "navigate a complicated procedural obstacle course by himself," and because the DOJ had expressly waived the statute of limitation for petitions under 28 U.S.C. §

2255, lulling him into thinking this waiver would apply to him as well. (Doc. No. 25 at 3-4.) But the United States Court of Appeals for the Eighth Circuit has made clear that equitable tolling is not warranted "[e]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources[.]" *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000). Neither Mr. Strawhacker's *pro se* status at the time he received the letter nor the complexity of this case constitutes an extraordinary circumstance. In addition, it is not clear that Mr. Strawhacker even received a copy of the DOJ's letter to the prosecutor referencing the waiver of procedural defenses for § 2255 petitions. (Doc. No. 31-9 at 210-12.) Even if he did have access to this letter, Mr. Strawhacker's misunderstanding of it would not justify equitable tolling. To reiterate, the letter stated the DOJ was merely providing the information to the prosecutor "to make you aware of how we are handling such situations in federal cases." (*Id*. at 211.) The letter further invited the prosecutor to "determine the actions your office should take" in light of the findings and advise the Department "if you intend to take any action[.]" (*Id*. at 210, 212.)

Second, Mr. Strawhacker argues the period between May 31 and June 27, 2023, during which time he was seeking permission from the Eighth Circuit to file a successive habeas petition, should be considered equitably tolled. (Doc. No. 25 at 4.) As Mr. Strawhacker points out, the Eighth Circuit denied authorization as unnecessary, as his first habeas petition, filed in 1994, had been dismissed without prejudice as premature. *See Lonnie Strawhacker v. Dexter Payne*, No. 23-2313 (8th Cir. 2023); *Lonnie Dolphus Strawhacker v. Larry Norris*, No. 5:94-cv-00583-GH (E.D. Ark. 1997). Mr. Strawhacker suggests his misapprehension of the relevant requirements should excuse this delay. Again, Mr. Strawhacker's *pro se* status during that time and any resulting misunderstanding of the law do not justify equitable tolling. *See Shoemate v. Norris*, 390 F.3d 595, 598 (8th Cir. 2004).

Finally, I note that even if equitable tolling were warranted for these two time periods, as Mr. Strawhacker urges, it would not be sufficient to make his Petition timely. Subtracting these two periods from the total, the limitation period ran for a total of 382 days – more than the one year set forth in § 2244(d).

### 2. Actual Innocence

Actual innocence, if proved, can serve as a gateway through which a petitioner may pass when the statute of limitations has expired. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). However, the United States Supreme Court has made clear that tenable actual-innocence gateway pleas are rare: in addition to coming forward with new, reliable evidence that was not presented at trial, a petitioner must also "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This standard is "demanding" and seldom met. *Id*. (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

Mr. Strawhacker contends he has met this standard because, without Malone's repudiated testimony, the only evidence against him was the victim's voice identification and his presence "in the vicinity of the incident." (Doc. No. 25 at 13-14.) Mr. Strawhacker understates the remaining evidence. Even assuming the DOJ's repudiation of Malone's testimony is new and reliable evidence,[1] Mr. Strawhacker's actual-innocence claim fails because he cannot show that no reasonable juror would have found him guilty.

---

[1] Respondent avers the DOJ's recantation is not the type of reliable evidence *McQuiggin* demands. (Doc. No. 31 at 36-38.) Given the scope of the Department's review and the specificity of its findings, especially as set out in the letter to the prosecutor, I disagree. Specifically, although Respondent suggests the recantation should be considered impeachment evidence at most, I think this fails to account for the possibility that Malone would not have been qualified as an expert at all and his testimony excluded altogether, had his methods been called into question earlier. In

Even without Malone's testimony, there was ample evidence at trial to establish Mr. Strawhacker's guilt. The victim testified that after spending four or five hours in the ditch with her attacker, she was unable to see his face due to the darkness and the fact that her eyes were swollen shut from the beatings. (Doc. No. 31-2 at 203.) However, she testified, she would "never forget his voice" and was "[v]ery" sure it was the voice she had picked out of the voice line-up. (*Id*. at 206.) Additionally, the assistant manager of security at Club West testified that he saw Mr. Strawhacker at the nightclub on the night of the rape and that he escorted him out at around 11:15 or 11:30 p.m. because he was intoxicated. (*Id*. at 276-80.) The manager saw Mr. Strawhacker again, outside the club, around 12:15 a.m. (*Id*. at 281.) He stated Mr. Strawhacker was clean, with no mud on his pants or blood on his shirt. (*Id*. at 280.) Another witness, a co-worker of Mr. Strawhacker's, testified that he saw Mr. Strawhacker around 9:00 a.m. the morning after the rape in the trailer park where the witness lived – the same trailer park where the victim lived. (*Id*. at 268-69.) According to this witness, Mr. Strawhacker's pants were muddy and his shirt, which was wadded up in his hands, had "quite a bit" of blood on it. (*Id*. at 270.) Mr. Strawhacker asked his co-worker for a ride and told him he had been at Club West the night before and had gotten into a fight with someone but could not remember who. (*Id*. at 269-70.) The witness testified Mr. Strawhacker had a scratch on his nose and one on his forehead, but no substantial injuries. (*Id*. at 271.)

The testimony of these two witnesses corroborates the victim's testimony that she was attacked in the ditch around midnight, that her attacker drove her back to her home in her car four or five hours later, and that he was gone by the time she woke up around 9:00 the next morning.

---

any event, the stronger argument is that Mr. Strawhacker has not carried his burden on the second prong of the actual-innocence standard.

11

(*Id*. at 200, 204, 206.)   Furthermore, although Mr. Strawhacker's statement that he had been in a fight was presumably an attempt to explain his condition, it does not explain his presence in the victim's trailer park the next morning, and the jury would have been able to infer guilt from this "improbable explanation[] of incriminating conduct."   *See Branscum v. State of Arkansas*, 345 Ark. 21, 29, 43 S.W.3d 148, 154 (2001).   In any event, under long-standing Arkansas law, the uncorroborated testimony of a rape victim is sufficient to support a verdict.   *See, e.g.*, *Cope v. State of Arkansas*, 292 Ark. 391, 393, 730 S.W.2d 242, 243 (1987).

Accordingly, Mr. Strawhacker has failed to meet the demanding standard of an actual-innocence gateway claim.   His Petition for Writ of Habeas Corpus is inexcusably time-barred and should be dismissed with prejudice for this reason.

**B. Merits**

Even if Mr. Strawhacker's Petition had been timely filed, he would not be entitled to relief. As Mr. Strawhacker acknowledges, federal habeas courts are restricted to a "limited and deferential review of underlying state court decisions."   *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).   Federal courts may not grant habeas relief on a claim that was adjudicated on the merits in state court unless the adjudication of the claim

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005).   Under subsection (d)(1), a state court decision is "contrary to" federal law if the state court arrives "at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state

12

court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007). A state court decision involves an "unreasonable application" of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under subsection (d)(2), a state court decision is based on an "unreasonable determination of the facts" "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003); *see also* 28 U.S.C. § 2254(e)(1) (a state court's factual finding shall be presumed to be correct, and the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence).

Mr. Strawhacker contends the trial court's decision denying his petition for writ of error *coram nobis*, later affirmed by the Arkansas Supreme Court, was contrary to clearly established federal law because it applied the wrong standard for assessing materiality. (Doc. No. 25 at 15-21.) Specifically, Mr. Strawhacker takes issue with the following conclusion in the trial court's order: "Therefore, the Defendant has failed to demonstrate that [the] outcome of the proceeding would have been different. He has failed to show that the repudiation of the evidence would have prevented the rendition of the judgment in this case, that being a guilty verdict." (Doc. No. 31-9 at 272.) According to Mr. Strawhacker, this "would have" language conflicts with the "reasonable probability" standard prescribed by the Arkansas Supreme Court when it reinvested jurisdiction: "Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strawhacker*,

13

2016 Ark. 348, at 7, 500 S.W.3d at 720 (quoting *Cloird v. State of Arkansas*, 349 Ark. 33, 38, 76 S.W.3d 813, 816 (2002)).

As Respondent suggests, Mr. Strawhacker cannot demonstrate the trial court's decision was contrary to clearly established federal law because there is no federal law on the subject. The trial court was applying Arkansas *coram nobis* law – the first case to expand *coram nobis* relief in this context, no less. *See Strawhacker*, 2016 Ark. 348, at 6-7, 500 SW.3d at 719-20 (acknowledging that Mr. Strawhacker's claim did not fall neatly into one of the four established categories for *coram nobis* relief and explaining that expanding the grounds for the writ may be necessary to ensure due process). It is true, however, that the Arkansas Supreme Court adopted the *Brady* standard for materiality, thus borrowing from federal law, and the essence of Mr. Strawhacker's claim is that the trial court failed to apply it. *See Pitts v. State of Arkansas*, 2020 Ark. 7, at 6, 591 S.W.3d 786, 791 ("[t]he trial court correctly understood our instructions in *Strawhacker* to apply an analysis similar to that used for a *Brady* violation"). Even so, he has failed to show the trial court's decision was contrary to federal law imposing *Brady*'s materiality standard.

First, although the trial court used the "would have" language in its order, its ruling from the bench clearly shows it engaged in a thorough reasonable-probability analysis. (Doc. No. 31-9 at 314-22.) After assessing the effects of the repudiation of Malone's testimony and going over all remaining evidence in the case, the court concluded Mr. Strawhacker had "failed to meet his burden of proof that there is a reasonable probability that the result would have been different, in other words, that there would have been an acquittal" if the repudiation had occurred pre-trial. (*Id*. at 322.) Moreover, the Arkansas Supreme Court employed the reasonable-probability

standard, disagreeing with Mr. Strawhacker's contention that the trial court had failed to do so. 2022 Ark. 134, at 12-13, 645 S.W.3d 326, 335.

Finally, and most importantly, while the trial court's "would have" language might appear to be an imprecise summation of the standard, it actually comes from long-standing, oft-repeated Arkansas law on the writ of error *coram nobis*: "The function of the writ is to secure relief from a judgment rendered while there existed some fact that *would have prevented its rendition* if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment." *See, e.g.*, *Ramirez v. State of Arkansas*, 2018 Ark. 32, at 3, 536 S.W.3d 614, 616 (emphasis added). In *Pitts v. State of Arkansas*, another case that came before the Arkansas Supreme Court on a *coram nobis* petition after the DOJ's repudiation of Malone's hair-comparison testimony, the court made clear this requirement stands alongside the reasonable-probability standard:

> Application of the rule of reason to fill a procedural gap does not, however, expand the other restrictions on granting the writ. *Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984). Pitts was required to demonstrate that the repudiation by the DOJ was a fact that would have prevented rendition of the judgment if it had been known at trial and that, as a consequence, the evidence was material. Although Pitts asserts that he was not required to demonstrate a reasonable probability of acquittal, he was required to demonstrate a reasonable probability that, had the DOJ's repudiation been disclosed to the defense, the result of the proceeding would have been different.
>
> Other courts have examined this issue and adopted standards under which the petitioner seeking relief must demonstrate that without the error, the jury would have had some basis for reasonable doubt. *See, e.g.*, *Florida v. Murray*, 262 So.3d 26 (Fla. 2018). Pitts did not contend that the evidence of the DOJ's repudiation would have led to any additional evidence to support his theory of the case. If the defense had known of the repudiation, it likely would have successfully contested admission of that evidence. The trial court correctly examined the impact of the repudiated evidence and whether, considering the evidence introduced at trial other than what was later repudiated, there was a reasonable probability of a different outcome—that is, an acquittal.

2020 Ark. 7, at 6-7, 591 S.W.3d 786, 791-92.  As the court stated in *Pitts*, the two inquiries produce the same result because "the question is essentially whether the trial was fundamentally unfair."  *Id*. at 7, 591 S.W.3d at 792.  Here, as in *Pitts*, Mr. Strawhacker did not point to any evidence favorable to him that would have arisen from the DOJ's repudiation of Malone's testimony.  He suggested only that the testimony would not have been allowed.  As in *Pitts*, the trial court correctly examined the impact of the repudiation, finding Malone's testimony would have been excluded had it been known to be erroneous, and concluded there was no reasonable probability of a different outcome given the remaining evidence.  (Doc. No. 31-9 at 314-22.)  In sum, Mr. Strawhacker has not shown that the trial court's analysis, affirmed on appeal, was contrary to the *Brady* standard.[2]

In a related argument, Mr. Strawhacker contends the state court's decision is contrary to federal law in another way:  the court "approached the inquiry exactly backward by removing the tainted evidence before conducting the analysis, when instead it must be part of the analysis." (Doc. No. 25 at 21.)  He cites caselaw holding *Brady*'s materiality inquiry "is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions"; instead, the relevant question is whether "'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"  *Strickler v. Greene*, 527 U.S. 263, 290 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).  According to Mr.

---

[2] Mr. Strawhacker also suggests the Arkansas Supreme Court's decision affirming the trial court's order was based on an unreasonable determination of the facts because it erroneously found the trial court had engaged in a reasonable-probability analysis when, in fact, it had not.  (Doc. No. 25 at 20-21.)  This argument is not well taken.  As previously stated, the trial court did undertake a reasonable-probability analysis.  Furthermore, a legal standard is not a fact for purposes of § 2254(d)(2).

16

Strawhacker, the centrality of Malone's testimony had a "substantial and injurious effect on the verdict."[3]  (Doc. No. 25 at 22.)

However, both the trial court and the Arkansas Supreme Court did consider whether the repudiation of Malone's testimony could reasonably be taken to put the case in a different light and undermine confidence in the verdict.  The trial court's exhaustive analysis led to the conclusion that, had the Department of Justice repudiated Malone's findings pre-trial and had the parties been aware, Malone would not have testified at all.  (Doc. No. 31-9 at 314-15.)  The court noted the repudiation would not have led to any additional evidence favorable to the defense: "Mr. Strawhacker does not contend that if, well, if we'd known about this, we got this other witness and that would have helped us make an additional point at the case."  (*Id*. at 319.)  The court also considered the extent to which Malone's testimony was impeached – "in my opinion, he was impeached more than any other witness" – and found that the elimination of Malone's testimony "does not in any way affect the testimony that was put on by the State's witnesses."  (*Id*. at 322.)  In short, the state court conducted exactly the type of analysis required by *Brady* and its progeny in the error *coram nobis* context.  "The trial court correctly examined the impact of the repudiated evidence and whether, considering the evidence introduced at trial other than what was later repudiated, there was a reasonable probability of a different outcome – that is, an acquittal."  *Pitts*, 2020 Ark. 7, at 7, 591 S.W.3d at 792.

---

[3] Mr. Strawhacker also suggests the State conceded materiality, based on a statement in the DOJ's letter informing him the prosecutor had advised the Department that Malone's work was "material to your conviction."  (Doc. Nos. 25 at 22, 31-9 at 208.)  At no point in the state court proceedings did the State of Arkansas concede this point, and the reference in the letter is clearly not using the term in a *Brady* context.

For all these reasons, Mr. Strawhacker has not met his burden of showing the state court decision denying *coram nobis* relief was contrary to clearly established federal law. Accordingly, even if his Petition had been timely filed, he would not be entitled to habeas relief.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Strawhacker has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Mr. Strawhacker's § 2254 Amended Petition for Writ of Habeas Corpus (Doc. No. 25) be DISMISSED with prejudice.

2. A certificate of appealability not be issued.

DATED this 26th day of June 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE